IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS BONILLA VAZQUEZ,

    Plaintiff,

    v.

WARNER-LAMBERT AND/OR PFIZER CORP., et al.,

    Defendants.

CIVIL NO. 03-2189 (RLA)

**ORDER DISMISSING THE COMPLAINT**

Plaintiff instituted these proceedings under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), challenging the termination of benefits received under the Long Term Disability Plan ("Plan") established by his former employer, PFIZER PHARMACEUTICALS LLC ("PFIZER"). Codefendant MEDICAL CARD SYSTEM, INC. ("MCS") is the current Long Term Disability Claims Administrator.[1]

The matter has been submitted solely on the record before MCS and the parties have filed memoranda in support of their respective positions.

PFIZER's Plan provides benefits to participants who are totally disabled after an initial two-year disability period. According to both the Plan and its Summary Plan Description ("SPD"), those receiving benefits will be periodically required to submit evidence of continued total disability. Additionally, long term disability

---

[1] MCS substituted MetLife, the Plan's original claims administrator effective July 1, 1997.

**CIVIL NO. 03-2189 (RLA)**                                                              **Page 2**

benefit recipients may be directed to undergo evaluations by physicians appointed by MCS to verify their continued entitlement to benefits. The Plan and its SPD also allow for disabled participants to enter into rehabilitation programs designed to enable them to return to work provided they have been previously approved by MCS.

Plaintiff having received long term disability benefits for a period of over two years, his continued entitlement to benefits will depend on whether or not he continued to meet the SPD's long term disability definition.

## BACKGROUND

Plaintiff, LUIS BONILLA VAZQUEZ, is a 57 year old male who worked for WARNER LAMBERT INC. as Chemical Stability Analyst of pharmaceutical products during 23 years from 1971 to 1994. MR. BONILLA has an Associate Degree in Chemistry.

In January 1977 due to an involuntary vapor inhalation while at work plaintiff began to suffer from a series of recurring toxic bronchial episodes. On January 17, 1977 the Puerto Rico State Insurance Fund ("SIF") diagnosed his condition as episodes of toxic repetitive bronchitis work-related.

Subsequently, in October 1982 Plaintiff also started to suffer from moderate muscular spasms of the back that rendered him unable to walk due to pain in his left leg. This condition was diagnosed as a herniated disc at L4-L5. In 1985 and 1988 Plaintiff was treated at the Auxilio Mutuo Hospital due to severe recurrent lumbar pain caused

**CIVIL NO. 03-2189 (RLA)**                                                                                   **Page 3**

by a sprain. In 1991 and 1993 plaintiff underwent two surgeries to repair his left shoulder rotator cuff which limited his movements and caused a great deal of pain. In 1994 plaintiff was also diagnosed with allergic bronchospasm.

In 1995 plaintiff sought and was approved long term disability benefits due to his pulmonary condition (Bronchial Asthma) caused by his exposure to chemical compounds used in his position at PFIZER. Additionally, plaintiff was awarded Social Security disability benefits that same year.

In December 2000 MCS notified plaintiff that it was conducting an audit to assess his continued eligibility for disability benefits and requested an update of his medical condition. In response thereto, plaintiff submitted an "Attending Physician's Statement" prepared by DR. GERARDO ALLENDE, his treating physician. DR. ALLENDE noted plaintiff's conditions of COPD,[2] herniated discs L-S and rotator cuff tear and opined that MR. BONILLA was permanently and totally disabled. Additionally, plaintiff provided MCS with DR. ALLENDE's two progress notes for visits in 1999 and 2000.

On January 30, 2001 plaintiff was evaluated by DR. RENE RAMIREZ ORTIZ, a pneumologist contracted by MCS. After testing and examination DR. RAMIREZ ORTIZ concluded that plaintiff suffered from Mild Persistent Bronchial Asthma and Chronic Sinopharyngitis with significant sinopharyngeal symptoms and that therapy was warranted.

---

[2] Chronic Obstructive Pulmonary Disease.

**CIVIL NO. 03-2189 (RLA)**                                                                **Page 4**

---

The pneumologist further noted that due to his condition plaintiff could not be re-exposed to any chemoirritant compound, organic solvent or toxic aerosols.

MCS also referred plaintiff for a Functional Capacity Evaluation ("FCE").[3] According to this initial FCE carried out on March 7, 2001 plaintiff was able to work at a Sedentary-Light Physical Demand Level during an eight-hour day.

On March 15, 2001 plaintiff was notified that his long term disability benefits were being terminated effective March 30, 2001 inasmuch as he was not "totally disabled" because he could work at a sedentary light level.

Plaintiff appealed this decision due to his continued allergic condition. In his March 21, 2001 letter plaintiff noted that even though his asthmatic condition was somewhat under control, he had developed a related chronic allergic condition which provoked constant colds. He had to take daily medication for pain, asthma and nasal allergy. According to plaintiff he had been taking sleep medication (Sonate-10) for over six months due to problems sleeping. Plaintiff also pointed out that during March 7, 2001 evaluation he was under the influence of medication for pain, asthma and cold symptoms, specifically, Albuterol, USP, Broncod JR, TJSNEL, Sonata-10 and Motrin. Additionally, plaintiff complained that his discs which

---

[3] The purpose of this test is to measure a person's physical abilities based on his limitations to determine his capacity to perform any occupation.

**CIVIL NO. 03-2189 (RLA)** **Page 5**

had been operated had been injured during the FCE which forced him to bed rest for 10 days. Plaintiff also noted that because he had no monies for medical treatment he was limited to lumbar massages. Plaintiff also made reference to the report prepared by DR. ANTONIO SANTIAGO, an allergist from the SIF. Plaintiff further noted that he had been taken in a very sick condition to the Carolina SIF in January 2001 for which reason he had requested treatment for his asthma. He also enclosed copy of the Industrial Commission's determination of February 6, 2001 acknowledging plaintiff's work-related Rinopharyngitis and authorizing additional medical treatment.

There is also copy in the record of a SIF notice of a medical appointment for March 6, 2001.

On April 9, 2001 plaintiff's appeal was denied. According to the notice, plaintiff had failed to submit new evidence of a continued treatment for his physical condition and the evidence forwarded did not support a total disability finding.

On June 4, 2001 plaintiff moved for reconsideration and submitted further medical evidence. Plaintiff forwarded reports from DR. FERNANDO J. LOPEZ-MALPICA, allergist and clinical immunologist, DR. SALGADO, physical therapist, and of DR. BEATRIZ DEL VALLE in support of his claim of continued total disability claim. Plaintiff noted that his apparent improvement at times was due to the medication for his Bronchial Asthma and pain. He listed the following medication for his current treatment: Cataflam 50 mg., Allegra 180

mg., Celebrex 200 mg., Oxycontin 10 mg., Vioxx 12.5 mg., Skelaxin 400 mg., Sonata 10 mg. and Flonase-Nasal Spray, 50 mcg.

Plaintiff also mentioned that both his arms were injured. The left arm had been operated on due to a Rotator Cuff tear and it was very probable that he would have to undergo surgery to repair his left Rotator Cuff too. Plaintiff noted that he was administered injections to explore the possibility of avoiding surgery. Plaintiff advised that he was due to begin a new therapy with DR. RICARDO A. RODRIGUEZ NAVARRO, a physiatrist.

On June 5, 2001 plaintiff advised MCS of his efforts to receive treatment from the SIF. He also noted that his Bronchial Asthma and chronic allergy had not improved and he was due to begin a treatment with allergy shots by DR. FERNANDO J. LOPEZ, an allergist, but needed the disability pension monies to pay for the treatment and medication.

On June 9, 2001 plaintiff forwarded additional medical reports in support of his disability which included evaluation and treatment required as a result of an accident. Plaintiff noted that both his arms hurt and he was receiving physical therapy. According to the letter the therapist's report would follow. The Evaluation and Treatment Report of DR. RICARDO RODRIGUEZ dated May 25, 2001 diagnosed right shoulder tendinitis and lower back pain/lumbar strain. The physician prescribed Cataflam 50 mg. and physical therapy x 18.

**CIVIL NO. 03-2189 (RLA)**                                                                   **Page 7**

On June 14, 2001 plaintiff forwarded copy of a June 1, 2001 Medicare summary for medical visits and physical therapy services including injections to his tendon/ligaments dated April 23, 25, 27, 30, May 2, 4, 7, 9, 11, 14, 16, 18, 21, 23, 24, 25, 29, 30, 2001.

There is also copy of the Physical Medicine and Rehabilitation Initial Evaluation dated April 19, 2001 noting plaintiff's complaints of upper back pain and the need of an auxiliary crutch for ambulation. Plaintiff's condition was assessed as: PRN spasm CT-LS and upper back myositis and therapy to the affected areas was ordered.

According to a Progress Note of April 23, 2001 plaintiff hurt his right side and could not extend or rotate his right arm due to the pain. The progress note for May 10, 2001 also indicates that plaintiff remained with UBM and PRN spasm C-T-L/S with right shoulder tenderness.

On July 3, 2001 MCS advised plaintiff that due to the medical evidence submitted in his last appeal he would be referred for a second FCE.[4]

On July 9, 2001 plaintiff submitted a medical evaluation dated that same day prepared by DR. RODRIGUEZ NAZARIO, an ACAA physiatrist, wherein plaintiff was diagnosed with shoulder tendinitis and pain in the lumbar region. An MRI was ordered and plaintiff prescribed Ambien

---

[4] Defendant claims that a June 19, 2001 letter denying plaintiff's second appeal was never sent. *See*, Defendants' Motion for Judgment on the Record (docket No. 24) p. 16.

**CIVIL NO. 03-2189 (RLA)** **Page 8**

10 mg. and Anaprox. Plaintiff advised MCS that he would be submitting additional evidence.

A copy of the Industrial Comm. Resolution dated June 4, 2001 advising that the June 1, 2002 hearing had been cancelled and instructing DR. FRANCISCO DE LA TORRE to appear for a new medical hearing was also attached.

Plaintiff underwent a second FCE on July 13, 2001 this time performed by DR. RAFAEL SEIN, a physiatrist. According to his Report dated July 20, 2001, DR. SEIN opined that plaintiff had "a work capacity level for sedentary duty with restrictions in the use of the right shoulder/arm." He also noted that plaintiff was experiencing pain on his right arm and shoulder as well as his lower back.

On August 3, 2001 MCS denied disability benefits once more because, according to the latest FCE, he could work at a sedentary level.

In the meantime, another report prepared by DR. RODRIGUEZ-NAZARIO, dated August 6, 2001 and received by MCS on August 9, 2001 indicates that plaintiff still complained of lower back pain and relates the MRI findings regarding the rotator cuff tear. The physician prescribed Vioxx and Physical Therapy x 18. Copy of plaintiff's MRI of July 12, 2001 also received by MCS on August 9, 2001, revealed: (1) partial intrasubstance rotator cuff tear; (2) right shoulder and right acromioclavicular degenerative joint

**CIVIL NO. 03-2189 (RLA)**                                                   **Page 9**

disease, and (3) findings compatible with biceps and subacromium bursitis changes.

On October 30, 2001 the Industrial Commission issued a resolution confirming a relapse of plaintiff's Rinopharyngitis condition and ordering the SIF to provide treatment for plaintiff's allergic condition which was notified to plaintiff on November 20, 2001.[5]

On December 7, 2001 plaintiff requested reconsideration of the August 3, 2001 decision and pointed out that he was processing the SIF treatment which had been denied despite a certificate from DR. FRANCISCO DE LA TORRE that plaintiff needed treatment and that plaintiff expected to begin SIF treatment in the near future. Plaintiff indicated that his condition had worsened and that he was scheduled for surgery on his right arm.

On December 21, 2001 MCS responded to plaintiff's request for reconsideration. The letter stated that according to the medical evidence and evaluations in record plaintiff was not totally disabled according to the Plan's definition. Plaintiff was advised that this notice constituted MCS' **final decision** on this matter.

On January 21, 2002 again plaintiff objected to the termination of benefits[6] making reference to SIF treatment, that he had appeared

---

[5] It is not clear from the record when this information was provided to MCS.

[6] It is important to note that this evidence was received by MCS **after** its final decision had been rendered and therefore, MCS was

**CIVIL NO. 03-2189 (RLA)**                                                                 **Page 10**

for the second FCE under the effect of sedatives, pain and sleep medication as well as medication to treat his Bronchial Asthma condition and advising that he had just been released from the hospital after surgery for his shoulder.

On January 28, 2002 MCS was alerted of plaintiff's January 15, 2002 surgery to repair his Right Rotator Cuff Tear.

On February 27, 2002 plaintiff forwarded MCS copy of an appointment with the SIF to continue treatment for Bronchial Asthma and chronic allergy.

MCS eventually responded on **March 7, 2002** indicating that its December 21, 2001 decision, which was based on the total evaluation of the medical evidence submitted by plaintiff as well as the independent tests performed, had been its final decision.

### SUMMARY JUDGMENT

In cases of judicial review of a plan administrator's disability determination based on the facts as developed in the administrative record "summary judgment is simply a vehicle for deciding the issue. This means the non-moving party is not entitled to the usual inferences in its favor" regardless of which standard of review applies. Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005) (citations omitted). Cited with approval in Buffonge v. The Prudential Ins. Co. of America, 426 F.3d 20, 28 n.10 (1st Cir. 2005).

---

under no obligation to take it into consideration.

**CIVIL NO. 03-2189 (RLA)**                                                                 **Page 11**

**STANDARD OF REVIEW**

ERISA does not specify the standard to be used by the courts in reviewing denial of benefits. However, the United States Supreme Court in addressing this matter has ruled that "a denial of benefits challenged under Section 502(a)(1)(B) of ERISA is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator, or fiduciary, discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 950, 103 L.Ed.2d 80, 95 (1989); Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 122 S.Ct. 2151, 2170, 153 L.Ed.2d 375 (2002); Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005).

The First Circuit Court of Appeals has consistently followed Firestone directing *de novo* review of benefit determinations unless the benefit plan grants discretionary authority to the administrator or fiduciary. *See* Campbell v. BankBoston, N.A., 327 F.3d 1, 6-7 (1st Cir. 2003); Cook v. Liberty Life Assurance Co. of Boston, 320 F.3d 11, 18 (1st Cir. 2003); Brigham v. Sun Life of Canada, 317 F.3d 72, 80 (1st Cir. 2003); Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998).

Thus, *de novo* review is the default standard unless the plan specifically allows for discretionary authority. Rush Prudential, 536 U.S. at 386, 122 S.Ct. at 2170, 153 L.Ed.2d at 402; Brigham, 317 F.3d

**CIVIL NO. 03-2189 (RLA)**                                                      **Page 12**

at 80; Terry, 145 F.3d at 37; McLaughlin v. The Prudential Life Ins. Co. of America, 319 F.Supp.2d 115, 124 (D.Mass. 2004).

If the administrator or fiduciary is given discretion to determine eligibility of benefits or to construe the terms of the plan the "arbitrary and capricious" standard will be applied in which case coverage decisions will be reviewed with a degree of deference to the administrator. Kolling v. Am. Power Conversion Corp., 347 F.3d 11, 13 (1st Cir. 2003); Lopes v. Metro. Life Ins. Co., 332 F.3d 1, 4 (1st Cir. 2003); Brigham, 317 F.3d at 81. *See also*, Buffonge, 426 F.3d at 28 (internal quotation marks and citation omitted) (Court "must defer to the claims administrator's benefits decision, disturbing it only if it was arbitrary, capricious, or an abuse of discretion.")

Where the discretionary grant is found, "Firestone and its progeny mandate a deferential arbitrary and capricious standard of judicial review." Recupero v. New England Tel. and Tel. Co., 118 F.3d 820, 827 (1st Cir. 1997) (internal quotations omitted); Pari-Fasano v. ITT Hartford Life and Accident Ins. Co., 230 F.3d 415, 418 (1st Cir. 2000); Terry, 145 F.3d at 37. "[F]actual determinations under ERISA plans are examined using the abuse of discretion standard of review; federal courts owe due deference to the administrator's factual conclusions that reflect a reasonable and impartial judgment." Vercher v. Alexander & Alexander, Inc., 379 F.3d 222, 231 (1st Cir. 2004) (citation and quotation marks omitted).

**CIVIL NO. 03-2189 (RLA)**                                                              **Page 13**

In this case the parties agree that our review of the Plan Administrator's decision will be guided by the arbitrary and capricious standard. "The operative inquiry under arbitrary, capricious or abuse of discretion review is whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits." Wright v. R.R. Donnelley & Sons Co., 402 F.3d 67, 74 (2005) (citation and internal quotation marks omitted). On arbitrary and capricious review, [the administrator's] decision will be upheld if the denial is reasonable and supported by substantial evidence." Glista v. Unum Life Ins. Co. of America, 378 F.3d 113, 126 (1st Cir. 2004). "Evidence is substantial if it is reasonably sufficient to support a conclusion, and the existence of contrary evidence does not, in itself, make the administrator's decision arbitrary." Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004). "[T]he proper standard for reviewing the decision of an insurer that has such discretionary authority is the arbitrary and capricious standard, but... 'the reasonableness of the insurer's decision determines whether or not it constituted an abuse of the discretion vested in the insurer by the plan'". Dandurand v. Unum Life Ins. Co. of America, 284 F.3d 331, 335-6 (1st Cir. 2002) (citing Pari-Fasano, 230 F.3d at 418). *See also*, Lopes, 332 F.3d at 6; Cook, 320 F.3d at 19.

## THE EVIDENCE

Our role under ERISA is "not which side we believe is right, but whether the insurer had substantial evidentiary grounds for a reasonable decision in its favor." Gannon, 360 F.3d at 216 (citation omitted). Further, the discretion to decide how much weight is to be afforded to any particular medical opinion or piece of evidence in the overall calculus lies with the claims administrator and not with the court. *Id*. at 214.

Applying this limited standard of review, upon examination of the evidence considered by MCS in its determination process we find that there is adequate support for its final decision. Apart from a treating physician none of the evaluations or evidence submitted by plaintiff indicate that he could not work. Only plaintiff's treating physician, DR. ALLENDE, deemed that plaintiff continued to be totally disabled. This opinion, however, was in conflict with that of the pneumologist contracted by MCS as well as the two FCEs carried out at the request of the claims administrator. However, "ERISA does not require plan administrators or reviewing courts to accord special deference to the opinions of treating physicians." Gannon, 360 F.3d at 215. *See also*, McLaughlin, 319 F.Supp.2d at 126 (no requirement that plan administrator defer to claimant's treating physician); Giannone v. Metro. Life Ins. Co., 311 F.Supp.2d 168, 177 (D.Mass. 2004) (no requirement that decision be based on opinions of claimant's physicians).

**CIVIL NO. 03-2189 (RLA)** **Page 15**

The fact that plaintiff may have been disabled under Social Security or continued to receive medical services from the SIF are of no moment for purposes of his continued long term disability under the Plan. A finding of disability under the Social Security Act is not controlling evidence in a determination of disability benefits under an insured long term disability plan, Gannon, 360 F.3d at 215 "except perhaps in the rare case in which the statutory criteria are identical to the criteria set forth in the insurance plan." Lopes, 332 F.3d at 6 n.9 (citing Pari-Fasano, 230 F.3d at 420).

Additionally, plaintiff challenges the termination of his long term disability benefits arguing that MCS relied on the FCE finding that he could work at a sedentary level but no consideration was given to his job description, qualifications or training.

The SPD establishes that a participant will be deemed totally disabled if, after having received benefits for two years, he is "unable to work in an occupation or job for which [he is] or may be qualified based on [his] academic background, training or experience."

We utilize the SPD's definition[7] because "where an SPD and the Plan documents contradict or conflict with each other, the SPD

---

[7] The Plan defined disability as "[t]he complete inability of an Employee to perform substantially all of the material duties of his or her regular occupation as it is generally performed in the national economy, or perform another occupation for which the Employee is qualified and can earn at least 75% of the pre-disability Compensation."

controls... The policy rationale for this rule is that the ERISA statute contemplates that employees will depend on the SPD, and if the Plan documents are allowed to supersede, then the SPD is useless." Mattias v. Computer Sci. Corp., 34 F.Supp.2d 120, (D.R.I. 1999).

Plaintiff had an Associate Degree in Chemistry and worked as a Chemical Stability Analyst for over 23 years. While it is true that the MCS review process did not specifically identify sedentary jobs which plaintiff could perform with his limitations as per the pneumologist and second FCE, even plaintiff's position description does not seem to require a level of exertion beyond a sedentary nature.

As in Gannon, we conclude that it was "reasonable for [the administrator] to rely on the FCE as evidence supporting its determination that [plaintiff] was not 'disabled' under the Plan because she was capable of performing sedentary work." 360 F.3d at 213.

Additionally, plaintiff argues that MCS failed to recommend rehabilitation for his condition. However, a cursory review of the Plan and the SPD clearly evinces that there is no obligation on the part of the defendant to place plaintiff in a rehabilitation program.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Administrative Record (docket No. **21**) is **DENIED**.

**CIVIL NO. 03-2189 (RLA)**                                                        **Page 17**

It is further ORDERED that Defendants' Motion for Judgment on the Record (docket No. **24**) is **GRANTED** and the complaint filed in this case is **DISMISSED.**

Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 8th day of February, 2006.

                                                  S/Raymond L. Acosta
                                                    RAYMOND L. ACOSTA
                                         United States District Judge